**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

PRUDENTIAL DEFENSE SOLUTIONS, INC.,

    Plaintiff,

v.                                                             Case No. 20-11785

JAKE W. GRAHAM, MARK SHEAHAN,
and ROBERT CHARNOT

    Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS**

Plaintiff Prudential Defense Solutions, Inc., brings this action under the Michigan Uniform Trade Secrets Act ("MUTSA"), Mich. Comp. Laws § 445.1904, the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b)(1), breach of contract, breach of fiduciary duty, silent fraud, tortious interference with contract, tortious interference with business expectancy, unjust enrichment, and civil conspiracy. (ECF No. 15, PageID.247-60.) It alleges Defendant Jake W. Graham was Plaintiff's Vice President and signed a non-compete agreement but then worked with Defendants Mark Sheahan and Robert Charnot, two non-employees, to establish a competing company.

Defendants move to dismiss all counts of the complaint. (ECF No. 13.) Plaintiff filed an amended complaint and a response, (ECF Nos. 15, 16); Defendants filed a reply. (ECF No. 17.) Having reviewed the record, the court does not find a hearing to be necessary. E.D. Mich. L.R. 7.1(f)(2). For the reasons provided below, the motion will be granted in part and denied in part.

## I.  BACKGROUND

The following are facts as alleged in Plaintiff's complaint. In a motion to dismiss, the court accepts Plaintiff's factual allegations as true but makes no overt finding as to truth or falsity. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff provides on-site security guard and mobile patrol services. (ECF No. 15, PageID.226, ¶ 10.) In December 2012, Defendant Graham signed a non-compete agreement with Prudential Security, Inc. ("PSI"), which, after a restructuring period in February 2019, conveyed and assigned its assets to Plaintiff. (*Id.*, PageID.227, ¶¶ 15, 12.) Another employee for PSI, James Howard, signed a non-compete with PSI in September 2014. (*Id.*, PageID.228, ¶ 17.) After the restructuring, Defendant Graham and Howard continued employment with Plaintiff in executive-level positions. (*Id.*, ¶ 20.) As Vice President, Defendant Graham had access to Plaintiff's business information and worked directly with Plaintiff's clients. (*Id.*, PageID.231-32, ¶¶ 31-32.) He was a highly compensated non-owner officer. (*Id.*, PageID.232, ¶ 33.)

Plaintiff employed Howard as a Vice President, and tasked him with maintaining relationships with Plaintiff's educational institution clientele. (*Id.*, ¶ 34.) Defendant Charnot worked as a business manager for educational institutions that conduct business with Plaintiff. (*Id.*, ¶ 36.) Defendant Sheahan is a Certified Public Accountant ("CPA") who previously provided services to PSI. (*Id.*, PageID.233, ¶ 38.)

Defendant Graham attempted to partner with Howard, Defendant Charnot, and Defendant Sheahan to establish a competing security guard and mobile patrol service company. Defendant Graham approached Howard and stated that the new company would contact Plaintiff's educational institution clients and convince them to terminate

their agreements with Plaintiff in favor of their new company. (*Id,* PageID.235, ¶ 47.) He explained that Defendant Sheahan understood PSI's finances from prior audit experience and would perform administrative tasks such as accounting and payroll; Defendant Charnot would help develop connections with educational institutions. (*Id.*, PageID.238, ¶ 61.) Plaintiff does not allege Howard joined the new firm but Defendants Graham, Charnot, and Sheahan entered an agreement to compete with Plaintiff. (*Id.*, PageID.239-40, ¶ 66.) In January 2020, Defendant Graham submitted an application for a private security contractor license. (*Id.*, PageID.242, ¶ 78.) Defendants established on office location, organized a new company, acquired funding, and obtained licenses. (*Id.*, PageID.236, ¶ 53.) According to the complaint, on June 2020, Defendant Graham downloaded Plaintiff's business information, including "information related to pricing, cost, and profit data, financial records, business plans, customer lists, organizational charts, copies of contracts with customers, contract bidding procedures and information, and employee information." (*Id.*, PageID.245-46, ¶ 89.)

Defendant Graham solicited at least one worker employed by Plaintiff other than Howard, and intended to solicit more in the future. (*Id.*, PageID.245, ¶¶ 86-87.) Defendants plan to solicit Plaintiff's clients. (*Id.*, PageID.246, ¶ 92.)

Plaintiff learned about Defendant Graham's actions and terminated his employment on July 2, 2020. (*Id.*, PageID.231, ¶ 30.) Plaintiff filed this action on July 1, 2020. (ECF No. 1.)

## II.  STANDARD

Under Federal Rule of Civil Procedure 12(b)(6) a party can move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In considering a

motion to dismiss, the court must "construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." *Laborers' Local 265 Pension Fund v. iShares Trust*, 769 F.3d 399, 403 (6th Cir. 2014). "To survive a motion to dismiss, a complaint must contain factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The plaintiff must present "more than labels and conclusions." *Twombly*, 550 U.S. at 545. "[A] formulaic recitation of a cause of action's elements will not do." *Id.*

When reviewing a motion to dismiss, the court "may not consider matters beyond the complaint." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009). However, the court may consider "documents incorporated into the complaint by reference . . . and matters of which a court may take judicial notice" in addition to the complaint's allegations. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The court may also consider "a document that is not formally incorporated by reference or attached to a complaint" when "[the] document is referred to in the complaint and is central to the plaintiff's claim." *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

### III. DISCUSSION

Defendants seek to dismiss all nine counts of the complaint. The court will address each claim in turn.

### A. MUTSA

Plaintiff alleges Defendants misappropriated trade secrets under MUTSA. MUTSA allows "a complainant to recover damages for misappropriation" of trade secrets. Mich. Comp. Laws § 445.1904. A "trade secret" is "information, including a formula, pattern, compilation, program, device, method, technique, or process, that is both of the following":

> (i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Mich. Comp. Laws § 445.1902(d); *see also Planet Bingo, LLC v. VKGS, LLC*, 319 Mich. App. 308, 321, 900 N.W.2d 680, 688 n.1 (2017). Although few published cases from Michigan courts or the Sixth Circuit have interpreted the meaning of this statutory language, relying on pre-existing precedent, the Sixth Circuit has stated that "[o]f critical importance . . . to be worthy of trade secret status, the secret information must afford the owner a competitive advantage by having value to the owner and potential competitors." *Dice Corp. v. Bold Tech.*, 556 F. App'x 378, 385 (6th Cir. 2014) (quoting *Diamler-Chrysler Servs. N. Am., LLC v. Summit Nat'l, Inc.*, 289 F. App'x 916, 922 (6th Cir. 2008)). "[T]rade secret law does not protect 'an idea which is well known or easily

ascertainable.'" *Id.* (quoting *Manos v. Melton*, 358 Mich. 500, 508, 100 N.W.2d 235, 238 (1960)).

"Misappropriation" under MUTSA is defined as:

(i) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means.

(ii) Disclosure or use of a trade secret of another without express or implied consent by a person who did 1 or more of the following:

    (A) Used improper means to acquire knowledge of the trade secret.

    (B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was derived from or through a person who had utilized improper means to acquire it, acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or derived from or through a person who owed a duty to the person to maintain its secrecy or limit its use.

    (C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Mich. Comp. Laws § 445.1902(b); *see also Planet Bingo, LLC*, 900 N.W.2d at 687-88.

**1. Trade Secret**

Defendants first contend that Plaintiff has not alleged the existence of a trade secret. (ECF No. 13, PageID.192-95.) Plaintiff alleges in its complaint that Defendants illegally took its "client lists and contact information, the details of its client contracts, pricing for services, cost and profit structures, contract bidding procedures and information, and employee information." (ECF No. 15, PageID.249, ¶ 108.) As Defendants themselves state, "[d]etermination of a trade secret is a fact-specific inquiry." *Erlich Prot. Sys., Inc. v. Flint*, Case No. 345323, 2019 WL 5851938, at *2 (Mich. Ct. App. Nov. 7, 2019). (ECF No. 13, PageID.192.) Yet Defendants ask, at the

pleading stage, that the court perform a factual inquiry and determine whether Plaintiff's information are trade secrets as a matter of law.

For example, Defendants assert that customer lists and contact information are *per se* not trade secrets. It is true that customer lists *could* fall outside the definition of trade secrets. Michigan law recognizes that there "nothing improper in an employee establishing his [or her] own business," *Hayes-Albion v. Kuberski*, 421 Mich. 170, 364 N.W.2d 609, 615 (1984), or utilizing one's "knowledge, information, or experience" taken from prior employment. *Utilase, Inc. v. Williamson*, 188 F.3d 510 (Table), at *8 (6th Cir. Sep. 10, 1999). If an employee utilizes his or her personal knowledge with specific clients to develop commercial relationships after leaving a job, the identities of clients may not in themselves constitute trade secrets. *See Hayes-Albion*, 364 N.W.2d at 615 (finding that "communicating with customers for whom [an employee] had formerly done work in . . . previous employment" did not present an actionable trade secret claim); *McKesson Med.-Surgical Inc. v. Micro Bio-Medics, Inc.*, 266 F. Supp. 2d 590, 594 (E.D. Mich. 2003) (holding that a consumer list "compiled from personal and public sources" by an ex-employee was not a trade secret). However, Plaintiff does not allege in its complaint that "client lists[,] contact information, [or] the details of its clients contracts" came solely from Defendants' own personal knowledge and otherwise non-confidential and public information. (ECF No. 15, PageID.249, ¶ 108.) That additional qualification comes from Defendants. (*See* ECF No. 13, PageID.193 ("The identities of Plaintiff's customers . . . [were] learned of simply working for Plaintiff.").

The same issue arises for the remainder of Defendants' arguments. They claim client identities can be easily obtained by investigating where individuals with Plaintiff's

7

uniforms are present, and by asking Plaintiff's sale employees directly. Alleged confidential pricing data can apparently be obtained by asking Plaintiff for a price quote; bidding information can be obtained through Freedom of Information Act requests; and Plaintiff's profits can be determined through economic analyses. (*Id.*, PageID.193-94.) These are all factual assertions not present in the complaint. For a motion to dismiss, the court "may not consider matters outside the complaint," *Hensley Mfg.*, 579 F.3d at 613, and must "construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." *Laborers' Local 265 Pension Fund*, 769 F.3d at 403. Defendants' argument is, at this stage, unavailing.

Defendants claim that one category of alleged trade secrets, "employee information," is too vague. (ECF No. 13, PageID.194-95; ECF No. 15, PageID.249, ¶ 108.) Several Michigan courts have stated that a MUTSA plaintiff must "identify with specificity the trade secret allegedly misappropriated." *E.g.*, *Indus. Control Repair, Inc. v. McBroom Elec. Co.*, Case No. 302240, 2013 WL 5576336, at *7 (Mich. Ct. App. Oct. 10, 2013). However, the Federal Rules of Civil Procedure require that Plaintiff's allegation provide a "reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft*, 556 U.S. at 678, and employee information could reasonably include valuable information such as names, experience, and job title.

Plaintiff has described types of data that could potentially "[d]erive independent economic value" from remaining secret. Mich. Comp. Laws § 445.1902(d)(i). It alleges that Defendant Graham had access to the information in his role as a senior executive and entered into an agreement barring Defendant Graham from disclosing or utilizing the information. (ECF No. 15, PageID.229-30, ¶ 23(g), PageID.231, ¶ 31.) Reasonable

8

efforts to maintain secrecy have been alleged. Mich. Comp. Laws § 445.1902(d)(ii). Plaintiff has plausibly alleged the existence of "trade secrets." *Id.*; *Ashcroft*, 556 U.S. at 678.

## 2. Misappropriation

Next, Defendants assert that Plaintiff has not pled misappropriation. Plaintiff alleges Defendant Graham entered into an agreement to not disclose or utilize Plaintiff's confidential information. (ECF No. 15, PageID.229-30, ¶ 23(g).) Defendant Graham allegedly uploaded the information from a secured work computer onto cloud storage Defendant Graham controlled. (*Id.*, PageID.245-46, ¶¶ 88-89.) According to Plaintiff, Defendant Graham disclosed that information to his business partners, Defendants Sheahan and Defendant Charnot, and all three Defendants established a competing business and developed plans to use the information to solicit clients. (*Id.*, PageID.236, ¶ 53, PageID.239-40, ¶ 66, PageID.246, ¶¶ 91, 92.)

Plaintiff has plausibly alleged that Defendants disclosed or utilized trade secrets without consent when "at the time of disclosure or use [they] knew or had reason to know that [their] knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use . . . or derived from or through a person who owed a duty to the person to maintain its secrecy or limit its use." Mich. Comp. Laws § 445.1902(b); *Ashcroft*, 556 U.S. at 678. Specifically, Plaintiff has alleged Defendant Graham had a contractual duty to maintain the secrecy of the information, and all three Defendants have used and plan to use that information to compete with Plaintiff.

Defendants again argue that the information at issue is taken from personal knowledge or is publicly available. (ECF No. 13, PageID.195-96.) They also claim Plaintiff's allegations are conclusory. (*Id.*, PageID.196-97.) Defendants' factual assertions are extraneous to the complaint; Plaintiff does not allege Defendants obtained the information from their personal experiences or from the public domain. Plaintiff's allegations provide detail and have gone beyond bare recitals of a MUTSA claim's elements and, as such, survives Defendants' motion. *Twombly*, 550 U.S. at 545.

### B. DTSA

The parties do not distinguish between MUTSA and DTSA, and recognize the standards for each are almost identical. *Compare* 18 U.S.C. § 1839, *with* Mich. Comp. Laws § 445.1902(b); *see also RGIS, LLC v. Gerdes*, 817 F. App'x 158, 162 (6th Cir. 2020) (finding that "federal law defines 'misappropriation' and 'trade secret' in similar ways" and "assum[ing] (without deciding) that the federal law follows the same standards as the state law"). (ECF No. 13, PageID.190; ECF No. 16, PageID.290.) Because Plaintiff states a valid claim under MUTSA, the court will deny Defendants' motion as to DTSA.

### C. Breach of Contract

Defendant Graham alleges Plaintiff's breach of contract claim against him should be dismissed. To bring a successful breach of contract claim under Michigan law, Plaintiff must prove that "(1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co. v. Ahrens Constr., Inc.*, 495 Mich. 161, 848 N.W.2d 95, 104 (2014) (citing *Stevenson v. Brotherhoods Mut. Benefit*, 312 Mich. 81, 19 N.W.2d 494, 498 (1945)). Plaintiff alleges

Defendant Graham entered into an agreement whereby Defendant Graham promised to not solicit Plaintiff's clients, disclose or utilize confidential information, or contact Plaintiff's employees in order to encourage the employees to leave Plaintiff. (ECF No. 15, PageID.228-30, ¶ 23.) A copy of the relevant contract is attached to the complaint. (*Id.*, PageID.266-68.) According to Plaintiff, Defendant Graham has established a business to compete and solicit Plaintiff's clients, (*id.*, PageID.235-36, ¶¶ 47-49, 53, PageID.239-40, ¶ 66, PageID.246, ¶ 92), disclosed confidential information, (*id.*, PageID.246, ¶ 91), and contacted Plaintiff's employees asking them to terminate their relationships with Plaintiff. (*Id.*, PageID.245, ¶ 86.) Plaintiff alleges Defendant Graham owes damages as a result. (*Id.*, PageID.252, ¶ 123.) Assuming the truth of these allegations, Plaintiff states a plausible breach of contract claim. *Ashcroft*, 556 U.S. at 678.

Defendant Graham argues that the contract attached to the complaint was not signed by him. (ECF No. 13, PageID.198.) This is a factual assertion that falls outside the four corners of the complaint. He also argues that Plaintiff failed to allege a breach because all of Defendant Graham's actions were preparatory in nature. (*Id.*) According to Defendant Graham, Plaintiff did not allege he "crossed over into actual competition." (*Id.*)

A contract claim may fail if the contract term is clear as a matter of law. *See Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 794 (6th Cir. 2016) (citing *Port Huron Educ. Assn. v. Port Huron Area Sch. Dist.*, 452 Mich. 309, 550 N.W.2d 228, 237 (1996)) ("When the language at issue is clear and unambiguous, its meaning is a question of law."). However, the court cannot find that the alleged contract unambiguously excludes

liability for planning and preparations. Plaintiff has also alleged actions, such as disclosure of confidential information, which may constitute more than mere planning, i.e., consummation of a competing business. (ECF No. 15, PageID.246, ¶ 91.)

### D.  Breach of Fiduciary Duty

Plaintiff alleges Defendant Graham breached a fiduciary duty. "A fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one upon the judgment and advice of another." *In re Monier Khalil Living Trust*, 328 Mich. App. 151, 936 N.W.2d 694, 703 (2019) (quotation removed). "To establish a claim for breach of fiduciary duty, a plaintiff must prove (1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damages caused by the breach of duty." *Highfield Beach at Lake Mich. v. Sanderson*, --- N.W.2d ----, 2020 WL 1445415, at *11 (Mich. Ct. App. Mar. 24, 2020).

Corporate officers owe a fiduciary duty to their corporations. *See Camden v. Kaufman*, 240 Mich. App. 389, 613 N.W.2d 335, 338-39 (2000) (citing Mich. Comp. Laws § 450.1541a); 6 Mich. Jur. *Corporations* § 143 (2020). Plaintiff alleges Defendant Graham was Plaintiff's "most highly compensated non-owner officer," employed in the position of Vice President. (ECF No. 15, PageID.232, ¶¶ 33-34.) The complaint adequately alleges the existence of a duty. *Highfield Beach at Lake Mich*, 2020 WL 1445415, at *11.

"A corporate officer . . . is under a fiduciary obligation not to divert a corporate business opportunity for his own personal gain." *BSA Mull, LLC v. Garfield Inv. Co.*, Case No. 310989, 2014 WL 4854306, at *17 (Mich. Ct. App. Sep. 30, 2014) (quoting *Prod. Finishing Corp. v. Shields*, 158 Mich. App. 479, 405 N.W.2d 171, 174 (1987)). In

addition, officers have a duty "to act in good faith and in the best interest of the corporation." *Gerald L. Pollack & Assocs., Inc. v. Pollack*, Case No. 319180, 2015 WL 339715, at *28 (Mich. Ct. App. Jan. 27, 2015); Mich. Comp. Laws § 450.1541a(1). Defendant Graham argues that he did not breach a duty by preparing to start a competing firm.

Michigan courts have recognized that a fiduciary may, "upon the termination of his employment, . . . use his skill, experience, and general knowledge to compete against [a former principal]." *Central Cartage Co. v. Fewless*, 232 Mich. App. 517, 591 N.W.2d 422, 427 (1998). Preparing to compete, so long as it does not benefit the fiduciary at the expense of the principal, is not illegal. *Quality Mfg., Inc. v. Mann*, Case No. 286491, 2009 WL 4827068, at *4-5 (Mich. Ct. App. Dec. 15, 2009) (quoting Restatement (Second) of Agency § 393 (Am. Law Inst. 1958)).

Plaintiff alleges that Defendant Graham prepared to form a new company and solicit Plaintiff's clients. (ECF No. 15, PageID.235, ¶¶ 47-49, PageID.246, ¶ 92.) The complaint continues, alleging Defendant Graham downloaded substantial amounts of confidential business information for his own personal use, (*id.*, PageID.245, ¶ 86), and actually solicited Plaintiff's employees to join his planned competing business. (*Id.*, ¶ 89.) The complaint further alleges that Defendant Graham used confidential information to "solicit business from [Plaintiff's] clients." (*Id.*, PageID.253, ¶ 127(c).) Thus, Plaintiff has plausibly alleged that Defendant Graham did not act "in the best interest of corporation" and breached his fiduciary duty. *Gerald L. Pollack & Assocs., Inc.*, 2015 WL 339715, at *28; *Ashcroft*, 556 U.S. at 678. Plaintiff alleges damages, (ECF No. 15,

PageID.253, ¶ 129), and has stated a valid fiduciary duty claim. *Highfield Beach at Lake Mich*, 2020 WL 1445415, at *11.

Defendant Graham contends Plaintiff's fiduciary duty claim is barred by MUTSA. (ECF No. 13, PageID.199.) Under Michigan law, "claims . . . that are based on misappropriation of 'trade secrets' as defined by MUTSA" are preempted. *Planet Bingo, LLC v. VKGS, LLC*, 319 Mich. App. 308, 900 N.W.2d 680, 688 (2017); Mich. Comp. Laws § 445.1908. However, "[Federal Rule of Civil Procedure] 8(a)(3) permits pleadings in the alternative." *Solo*, 819 F.3d at 794. Evidence may show that Defendants did not "misappropriate" a "trade secret" under MUTSA. The court has not held definitively that MUTSA applies, and a finding of preemption at this early stage is not warranted.[1] *Oldnar Corp. v. Panasonic Corp. of N. Am.*, 766 F. App'x 255, 268 (6th Cir. 2019) (reversing a district court finding of MUTSA displacement when "the district court did not make [a] determination" that the information was a "trade secret").

### E. Silent Fraud

Plaintiff brings a claim of silent fraud against all Defendants. "It is generally recognized that fraud may be consummated by suppression of facts and of the truth, as well as by open false assertions . . . since a suppression of the truth may amount to a suggestion of falsehood." *Hord v. Env't Rsch. Inst. of Mich.*, 463 Mich. 399, 617 N.W.2d 543, 550 (2000) (quotations removed). "[T]he touchstone of liability for . . . silent fraud is that some form of representation has been made and that it was or proved to be false.

---

[1] Defendants make the same argument, equally unconvincing, for Plaintiff's claims under silent fraud, tortious interference with a contract, tortious interference with business expectancy, unjust enrichment, and civil conspiracy. (ECF No. 13, PageID.200, 204, 206.)

In other words . . . at least as applied to fraud cases, there is no general inchoate duty to disclose." *M&D, Inc. v. W.B. McConkey*, 231 Mich. App. 22, 585 N.W.2d 33, 38 (1998). There must be "a legal or equitable duty of disclosure" and "some type of representation by words or actions that was false or misleading and was intended to deceive." *Roberts v. Saffell*, 280 Mich. App. 397, 760 N.W.2d 715, 719-20 (2008); *accord Barclae v. Zarb*, 300 Mich. App. 455, 834 N.W.2d 100, 116 (2013).

Plaintiff alleges that Defendants planned to form a competing business and solicit Plaintiff's employees and clients. (ECF No. 15, PageID.253, ¶ 131.) According to Plaintiff, Defendant Graham had a legal duty to disclose these facts due to contract and fiduciary obligations, and Defendants Charnot and Sheahan had a duty to disclose due to prior associations with Plaintiff and their receipt of confidential information.[2] (*Id.*, PageID.253-54, ¶¶ 131-32.) However, Plaintiff cites no authority for the contention that non-compete contracts and fiduciary duties create a duty to disclosure under a silent fraud theory. Plaintiff in essence repackages its breach of contract and fiduciary duty claims through the doctrine of fraud. If Plaintiff wishes to enforce its rights under a contract and fiduciary relationship, it can (and does) bring those claims directly. For Defendants Charnot and Sheahan, there is no authority for the assertion that having a prior association and using confidential information alone creates disclosure obligations under silent fraud. This approaches a "general inchoate duty to disclose," which is not recognized in Michigan. *M&D, Inc.*, 585 N.W.2d at 38.

---

[2] Plaintiff explicitly asserts Defendants' "fraudulent conduct and [their] failure to disclose . . . caused [Plaintiff] to have the false impression that Defendant Graham was complying with [his] Restrictive Agreement [with Plaintiff] [and] fiduciary duties," and "Defendants Charnot and Sheahan were maintaining confidentiality of information." (*Id.*, PageID.254-55, ¶¶ 136-37.)

The most natural silent fraud claim is where a defendant makes statements that are incomplete or misleading "in response to a specific inquiry by the [plaintiff]." *M&D, Inc.*, 585 N.W.2d at 39; *see also Hord*, 617 N.W.2d at 550. Plaintiff does not plausibly allege Defendants, simply by forming a competing company, made "representation[s] by words or actions that w[ere] false or misleading." *Roberts*, 760 N.W.2d at 719-20. The silent fraud claim will be dismissed.

### F. Tortious Interference with Contract

Plaintiff brings a claim for tortious interference with contract. The elements are "(1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Health Call of Detroit v. Atrium Home & Health Care Serv., Inc.*, 268 Mich. App. 83, 706 N.W.2d 843, 848-49 (2005) (citing *Badiee v. Brighton Area Schs.*, 265 Mich. App. 343, 695 N.W.2d 521, 539 (2005)). Plaintiff alleges it had contracts with clients and employees and Defendants, and Defendants formed a competing company and solicited the clients and employees. (ECF No. 15, PageID.256-57, ¶¶ 146, 148.) The complaint does not include allegations that any of Plaintiff's clients or employees breached contractual agreements and patronized or worked for Defendants' new company. The second element of tortious interference with contract is not met. *See Dzierwa v. Mich. Oil Co.*, 152 Mich. App. 281, 393 N.W.2d 610, 613 (1986) (finding no tortious interference where there was "no breach").

Plaintiff argues that Defendants Charnot and Sheahan interfered with Plaintiff's contract with Defendant Graham. The complaint does not include this allegation and instead states Defendants as a whole solicited "additional" employees. (ECF No. 15,

PageID.257, ¶ 148(b).) Further, to succeed on this claim Plaintiff must prove "either that [Defendants] committed an act that was so wrongful that [they] had no justification whatsoever for committing that act, and did so with malice and the intent to induce [Defendant Graham] to breach [his] contracts, or that [Defendants] committed a lawful act with malicious intent to instigate [Defendant Graham] to breach [his] contracts." *Knight Enters. v. RPF Oil Co.*, 299 Mich. App. 275, 829 N.W.2d 345, 348 (2013) (quotation removed). Yet it was Defendant Graham who, according to the complaint, "solicit[ed] Defendant[s] Charnot and . . . Sheahan" to join with Defendant Graham and compete against Plaintiff. (ECF No. 15, PageID.233, ¶ 40.) Plaintiff has not alleged that Defendants Charnot and Sheahan acted with malicious intent to induce *Defendant Graham* to breach his agreement with Plaintiff. *Knight Enters.*, 829 N.W.2d at 348. The tortious interference with contract claim will be dismissed.

### G. Tortious Interference with Business Expectancy

Plaintiff brings a separate claim for tortious interference with business expectancy. The elements of the claim are "(1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted." *Health Call of Detroit*, 706 N.W.2d at 849; *accord Cedroni Ass'n, Inc. v. Tomblinson, Harburn Ass.*, 492 Mich. 30, 821 N.W.2d 1, 3 (2012). Like its claim for tortious interference with contract, Plaintiff alleges Defendants solicited clients and employees but does not allege that Defendants actually

17

"induc[ed] or caus[ed] a breach of termination of [a] relationship or expectancy." *Health Call of Detroit*, 706 N.W.2d at 849; *see also Puetz v. Spectrum Health Hosps.*, 324 Mich. App. 51, 919 N.W.2d 439, 453 (2018) (holding that a defendant had interfered when it "terminated or prohibited" a business relationship). (ECF No. 15, PageID.258-59, ¶ 155.) Plaintiff argues again that Defendants Charnot and Sheahan interfered with Plaintiff's business expectancy with Defendant Graham. The argument is unconvincing for the same reasons provided in the tortious interference with contract analysis. This claim will also be dismissed.

### H.  Unjust Enrichment

The elements of unjust enrichment are "(1) the receipt of a benefit by the other party from the complaining party and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other party." *Karaus v. Bank of N.Y. Mellon*, 300 Mich. App. 9, 22, 831 N.W.2d 897, 905 (2012) (citing *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 193, 729 N.W.2d 898, 904 (2006)). Plaintiff alleges that Defendants' "intentional misconduct" and "improper interference with [Plaintiff's] employees" resulted in a "substantial benefit" for Defendants. (ECF No. 15, PageID.259-60, ¶ 159.) However, Plaintiff does not state what benefits Defendants inequitably received. "Intentional misconduct" is conclusory, and interfering with Plaintiff's employees does not by itself confer a benefit, especially where Plaintiff does not allege any employees left for Defendants' firm. Plaintiff's briefing is no better, where it cursorily asserts Defendants were unjustly enriched because Defendant Graham "breach[ed] . . . [his] Restrictive Agreement, which prohibits . . . competitive activity." (ECF No. 16, PageID.302.) Breaching an agreement and engaging in competition are

18

not "receipt[s] of . . . benefit[s]." *Karaus v. Bank of N.Y. Mellon*, 831 N.W.2d at 905. Plaintiff must come forward beyond "labels and conclusions" and point to allegations that substantiate an unjust enrichment claim. *Twombly*, 550 U.S. at 545. It failed to do so and the claim will be dismissed.

### I.  Civil Conspiracy

Plaintiff brings a claim for civil conspiracy. "A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365, 670 N.W.2d 569, 580 (2003) (quoting *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 194 Mich. App. 300, 486 N.W.2d 351, 358 (1992)). Civil conspiracy is not a claim of its own; "it is necessary to prove a separate, actionable tort." *Id.* (quoting *Early Detection Center, PC v. N.Y. Life Ins. Co.*, 157 Mich. App. 618, 403 N.W.2d 830, 836 (1986)). The four torts Plaintiff alleges Defendants conspired to commit are: tortious interference with contract and business expectancy, silent fraud, and breach of fiduciary duty. (ECF No. 15, PageID.260, ¶ 164; ECF No. 16, PageID.304.) The tortious interference and silent fraud claims will be dismissed, and the only actionable claim remaining is breach of fiduciary duty. Plaintiff adequately alleges Defendants Charnot and Sheahan undertook with Defendant Graham "concerted action" to breach Defendant Graham's fiduciary duties. *Advoc. Org. for Patients & Providers*, 670 N.W.2d at 580. (ECF No. 15, PageID.239-40, ¶ 66, PageID.245-46, ¶¶ 86, 92, PageID.252-53, ¶ 127.) The complaint alleges a valid civil conspiracy claim.

### IV. CONCLUSION

Plaintiff has stated viable claims under MUTSA, DTSA, breach of contract, and breach of fiduciary duty. It also properly alleges a civil conspiracy claim for breach of a fiduciary duty. Plaintiff's silent fraud, tortious interference, and unjust enrichment counts will be dismissed. Accordingly,

IT IS ORDERED that Defendants' Motion to Dismiss (ECF No. 13) is GRANTED IN PART and DENIED IN PART. It is GRANTED as to Plaintiff's claims under silent fraud (Count V), tortious interference with contract (Count VI), tortious interference with business expectancy (Count VII), and unjust enrichment (Count VIII). It is DENIED as to Plaintiff's claims under MUTSA (Count II), DTSA (Count I), breach of contract (Count III), breach of fiduciary duty (Count IV), and civil conspiracy (Count IX).

                                              s/Robert H. Cleland               /
                                              ROBERT H. CLELAND
                                              UNITED STATES DISTRICT JUDGE

Dated: October 30, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 30, 2020, by electronic and/or ordinary mail.

                                              s/Lisa Wagner                   /
                                              Case Manager and Deputy Clerk
                                              (810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\20-11785.PRUDENTIALDEFENSESOLUTIONS.MotiontoDismiss.RMK.RHC.2.docx