**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**
_____

PRUDENTIAL DEFENSE SOLUTIONS, INC.,

    Plaintiff,

v.                                                  Case No. 20-11785

JAKE W. GRAHAM, MARK SHEAHAN,
and ROBERT CHARNOT

    Defendants.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Prudential Defense Solutions, Inc., brings this action under the Michigan Uniform Trade Secrets Act ("MUTSA"), Mich. Comp. Laws § 445.1904, the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b)(1), breach of contract, breach of fiduciary duty, and civil conspiracy. (ECF No. 15, PageID.247-60.) It alleges Defendant Jake W. Graham was Plaintiff's vice president and signed a non-compete agreement but worked with Defendants Mark Sheahan and Robert Charnot, two nonemployees, to establish a competing private security company. Defendants also allegedly misappropriated Plaintiff's proprietary information to use in their competing business.

Plaintiff has asked the court to enjoin Defendants from engaging in competition, including by soliciting Plaintiff's current clients and employees. (ECF No. 18, PageID.516-17; ECF No. 2.) The court held hearings on December 16 and 22, 2020,

and granted Plaintiff's motion on the record. This opinion and order serves to further memorialize the court's findings.

## I. STANDARD

The court considers four factors when deciding whether to grant a preliminary injunction. First, the court must determine "whether the plaintiff has established a substantial likelihood or probability of success on the merits of his claim." *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689-90 (6th Cir. 2014). Next, the court must consider "whether the plaintiff would suffer irreparable injury if a preliminary injunction did not issue." *Id.* Finally, the court must analyze "whether the injunction would cause substantial harm to others" and "whether the public interest would be served if the court were to grant the requested injunction." *Id.*

The four factors "are to be balanced against each other. A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

## II. DISCUSSION

### A. Likelihood of Success on the Merits.

Plaintiff's motion focuses on the breach of contract and trade secrets claims, (ECF No. 18, PageID.506-07), both of which have a substantial likelihood of success. *Liberty Coins, LLC*, 748 F.3d at 689-90.

### 1. Breach of Contract

A breach of contract claim has three elements. The plaintiff must show "(1) there was a contract (2) which the other party breached (3) thereby resulting in damages to

the party claiming breach." *Miller-Davis Co. v. Ahrens Constr., Inc.*, 495 Mich. 161, 848 N.W.2d 95, 104 (2014) (citing *Stevenson v. Brotherhoods Mut. Benefit*, 312 Mich. 81, 19 N.W.2d 494, 498 (1945)).

Plaintiff has presented substantial evidence that Defendant Graham signed a non-compete agreement. *Liberty Coins, LLC*, 748 F.3d at 689-90; *Miller-Davis Co.*, 848 N.W.2d at 104. Defendant Graham agreed with Prudential Security, Plaintiff's predecessor company, not to sell services also sold by Prudential Security, not to solicit Prudential Security's employees, and not to solicit Prudential Security's clients within 100 miles of Defendant Graham's "assigned principal location" for "two . . . years after termination." (ECF No. 31-2, PageID.947.) Defendant Graham also agreed not to "[d]isclose or utilize any confidential information," including "any records or information pertaining to . . . customers, client lists, . . . [and] price lists." (*Id.*) As part of a corporate restructuring, Prudential Security's rights in this contract were assigned to Plaintiff. (ECF No. 31-1, PageID.922, 940.)

Defendant Graham alleges in response that he did not sign the agreement, and that, at a minimum, the issue presents a question of fact. (ECF No. 20, PageID.662.) However, he offers no evidence in support. Plaintiff, in turn, has shown that the signature on the non-compete agreement is, even to an untrained eye, indistinguishable from a signature Defendant Graham applied to a document on Plaintiff's behalf before his termination. (ECF No. 18, PageID.511.) Plaintiff also presented evidence that Defendant Graham attempted to solicit one of Plaintiff's high-ranking employees. (ECF 18-2, PageID.525.) The employee asserted that Defendant Graham admitted to signing

a non-compete agreement. (*Id.*, PageID.524.) Substantial evidence demonstrates that Defendant Graham signed the contract at issue.

Plaintiff also argues that the contract is not enforceable. (ECF No. 20, PageID.664-69.) The court disagrees; substantial evidence shows the agreement is enforceable. *Liberty Coins, LLC*, 748 F.3d at 689-90. Agreements not to compete must be reasonable "in terms of duration, geographical scope, and the type of employment or line of business." *Coates v. Bastian Bros., Inc.*, 741 N.W.2d 539, 545 (Mich. Ct. App. 2007). The agreement cannot seek "merely [to] prevent[] competition" and must "protect against the employee's gaining some unfair advantage in competition." *St. Clair Med., P.C. v. Borgiel*, 715 N.W.2d 914, 919 (Mich. Ct. App. 2006).

The contract serves to protect Plaintiff from unfair competition and is not an overly broad limitation on all reasonable competition. Plaintiff presented substantial evidence at the court's December 16 and 22 hearings that Defendant Graham enjoyed essentially unfettered access to a significant array of proprietary business information, including client lists, pricing, bidding, and employee information. (ECF No. 15, PageID.232.) This was confirmed through the testimony of Patrick Kakos, Plaintiff's co-owner and director of operations. Defendant Graham also represented Plaintiff in negotiating client contracts and took the lead in developing business relationships in the Chicago area. (*Id.*, PageID.232; ECF No. 38-27, PageID.1122; ECF No. 31-28, PageID.1141.) Employers may use non-compete agreements to prevent ex-employees from using "confidential business information" or "unfairly tak[ing] advantage of the employer's investments in advertising and goodwill when competing with the former employer to retain [clients]." *St. Clair Med., P.C.*, 715 N.W.2d at 919; *see also Teachout*

4

*Sec. Servs. v. Thomas*, Case No. 293009, 2010 WL 4104685, at *3 (Mich. Ct. App. Oct. 19, 2010) ("[A]n employee who establishes client contacts and relationships as the result of the goodwill of his employer's business is in a position to unfairly appropriate that goodwill."). The competition restrictions in the agreement are enforceable.

The geographical scope of the agreement is also reasonable. Limiting competition within 100 miles of Plaintiff's Chicago office reasonably prevents Defendant Graham from using unfair competition to attract clients and employees away from Plaintiff. *See Coates*, 741 N.W.2d 546 (holding that a bar on competition "within one hundred . . . miles of any business location" was reasonable); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Ran*, 67 F. Supp. 2d 764, 783 (E.D. Mich. 1999) (Steeh, J.) (enforcing non-compete agreement with 100 mile scope). In addition, the time duration of two years is reasonable. *See Rooyakker & Sitz, P.L.L.C. v. Plante & Moran, P.L.L.C.*, 742 N.W.2d 409, 418 (Mich. Ct. App. 2007) (holding that a two-year non-compete term was reasonable); *Total Quality, Inc. v. Fewless*, --- N.W.2d ----, 2020 WL 3885083, at *8 (Mich. Ct. App. July 9, 2020) ("[T]he two-year duration of [a non-compete agreement] was reasonable.").

Plaintiff has presented substantial evidence that Defendant Graham breached the agreement. *Liberty Coins, LLC*, 748 F.3d at 689-90; *Miller-Davis Co.*, 848 N.W.2d at 104. The record demonstrates that Defendant Graham formed a competing company and developed plans to solicit clients Plaintiff previously served or with whom Plaintiff had a business relationship. Plaintiff has shown that Defendant Graham established a corporate entity, (ECF Nos. 31-9, 31-9), and that even as this case was progressing, Defendant Graham proceeded to obtain the necessary licenses to provide private

5

security services in the state of Illinois. (ECF Nos. 31-15, 31-17.) Defendant Graham has also leased property and opened an office. (ECF Nos. 31-12, 31-13.) Plaintiff has provided emails showing Defendant Graham contacting Defendants Sheahan and Charnot and identifying three customers Defendant Graham solicited while in Plaintiff's employ. (ECF Nos. 31-11; ECF No. 31-27, PageID.1123.) Defendant Graham stated he received "verbal commitments" from the three prospective clients in March 2020 when Defendant Graham was still working for Plaintiff; Defendant Graham asserted the clients were "fair game." (ECF Nos. 31-11.)

Plaintiff has also shown that Defendant Graham has solicited Plaintiff's employees to join Defendant Graham's competing business. A vice-president in Plaintiff's company submitted an affidavit stating Defendant Graham contacted him on multiple occasions and tried to convince the vice-president to join Defendant Graham's company. (ECF No. 31-28, PageID.1142.) The vice-president asserted Defendant Graham admitted to soliciting at least one other employee of Plaintiff. (*Id.*, PageID.1148.) Defendant Graham's non-compete agreement bars him from "attempt[ing] sale" of services offered by Plaintiff, "solicit[ing] . . . or attempt[ing] to . . . solicit" Plaintiff's employees, and "attempt[ing] to . . . solicit" Plaintiff's clients. (ECF No. 31-2, PageID.947.) The court finds it substantially likely that Defendant Graham breached his non-compete agreement, thereby causing Plaintiff injury. *Liberty Coins, LLC*, 748 F.3d at 689-90; *Miller-Davis Co.*, 848 N.W.2d at 104.

**2. Trade Secrets**

To establish a trade secret claim under MUTSA, the plaintiff must show the existence of a trade secret and misappropriation. Mich. Comp. Laws § 445.1902(b), (d);

6

Mich. Comp. Laws § 445.1902(b), (d); *see RGIS, LLC v. Gerdes*, 817 F. App'x 158, 162 (6th Cir. 2020) (finding that DTSA "defines 'misappropriation' and 'trade secret' in similar ways" and "assum[ing] (without deciding) that the federal law follows the same standards as the state law").

A "trade secret" is "information, including a formula, pattern, compilation, program, device, method, technique, or process, that is both of the following":

> (i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Mich. Comp. Laws § 445.1902(d); *see also Planet Bingo, LLC v. VKGS, LLC*, 319 Mich. App. 308, 321, 900 N.W.2d 680, 688 n.1 (2017).

"Misappropriation" under MUTSA is defined as:

> (i) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means.
>
> (ii) Disclosure or use of a trade secret of another without express or implied consent by a person who did 1 or more of the following:
>
> > (A) Used improper means to acquire knowledge of the trade secret.
> >
> > (B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was derived from or through a person who had utilized improper means to acquire it, acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or derived from or through a person who owed a duty to the person to maintain its secrecy or limit its use.
> >
> > (C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

7

Mich. Comp. Laws § 445.1902(b); *see also Planet Bingo, LLC*, 900 N.W.2d at 687-88.

"Improper means" under MUTSA includes "theft, bribery, misrepresentation, breach, or inducement of a breach of a duty to maintain secrecy or espionage through electronic or any other means." Mich. Comp. Laws § 445.1902(a).

Plaintiff has shown a substantial likelihood that trade secrets existed. Mich. Comp. Laws § 445.1902(d); *Liberty Coins, LLC*, 748 F.3d at 689-90. Defendant Graham had access to proprietary data such as pricing information, business plans, customer lists, and employee information, and Defendant Graham uploaded the data to cloud servers only he could access. (ECF No. 15, PageID.245-46.) Plaintiff's co-owner and director of operations, Patrick Kakos, offered uncontradicted testimony that Plaintiff's pricing information and bidding strategies, documents downloaded by Defendant Graham, are major assets for a competitor. According to Kakos, the competitor can use the information to underbid any of Plaintiff's current clients and gain market share. *See also Kelly Servs., Inc. v. Noretto*, 495 F. Supp. 2d 645, 658 (E.D. Mich. 2007) (Gadola, J.) (finding pricing policies constituted a trade secret under MUTSA). Employee information, including salary and contact information, can be used by a competitor to solicit and successfully lure away Plaintiff's employees. A substantial likelihood exists that the information Defendant Graham downloaded onto his personal cloud server "[d]erives independent economic value . . . from not being generally known" to competitors. *Liberty Coins, LLC*, 748 F.3d at 689-90; Mich. Comp. Laws § 445.1902(d).

The information was accessible to Defendant Graham as a high-level executive. (ECF No. 15, PageID.231, 245-46.) Patrick Kakos offered uncontradicted testimony that he, Plaintiff's other co-owner, other select employees, and Defendant Graham were the

8

only individuals with access to any pricing, cost, payroll, or employee information. A computer forensic expert confirmed at the December 16 and 22 hearings that the information uploaded onto Defendant Graham's cloud server had been password protected on Defendant Graham's company-issued computer. Only Defendant Graham could access the information on the cloud server, even after he left Plaintiff's employ.

As described above, years before Defendant Graham acquired the information, he had signed a non-disclosure agreement, preventing use of confidential information outside Defendant Graham's employment with Plaintiff. *See Stryker Corp. v. Ridgeway*, Case No. 13-1066, 2016 WL 362555 (W.D. Mich. Jan. 29, 2016) ("[N]on-disclosure agreements" and "confidentiality agreements . . . constitute reasonable efforts to maintain the secrecy of a trade secret."). (ECF No. 31-2, PageID.947.) There is a substantial likelihood that the information was "the subject of efforts that are reasonable under the circumstances to maintain its secrecy," Mich. Comp. Laws § 445.1902(d), and is not publicly available or taken purely from Defendants' personal knowledge. *Dice Corp. v. Bold Tech.*, 556 F. App'x 378, 385 (6th Cir. 2014) ("[T]rade secret law does not protect an idea which is well known or easily ascertainable."); *see Liberty Coins, LLC*, 748 F.3d at 689-90.

The court also finds there is a substantial likelihood that the trade secret information was misappropriated. Mich. Comp. Laws § 445.1902(b); *Liberty Coins, LLC*, 748 F.3d at 689-90. Defendant Graham has been in communication with Defendants Sheahan and Charnot, discussing pricing of security services and potential clients. (ECF Nos. 31-10, 31-11, 31-18.) Defendant Graham discussed pricing information in detail and listed proposed labor costs and margin rates. (ECF No. 31-11.) One of

9

Plaintiff's employees submitted an affidavit stating he witnessed Defendants meet and plan the future of their business, including distribution of profits. (ECF No. 31-28, PageID.1144-46.)

A substantial likelihood exists that Defendants, as business partners in the new venture, acquired and gained access to Plaintiff's trade secret information through Defendant Graham's cloud storage. *Liberty Coins, LLC*, 748 F.3d at 689-90. It appears likely Plaintiff will be able to successfully prove the "[a]cquisition of a trade secret . . . by person[s] who know[] or ha[ve] reason to know that the trade secret was acquired by improper means." Mich. Comp. Laws § 445.1902(b). "Improper means" includes "breach . . . of a duty to maintain secrecy." Mich. Comp. Laws § 445.1902(a). Defendant Graham had a "duty to maintain secrecy" of the information through his non-disclosure employment contract. Mich. Comp. Laws § 445.1902(a); *see Brake Parts, Inc. v. Lewis*, 443 F. App'x 27, 30 (6th Cir. 2011) (holding a party had a duty of secrecy after contractually agreeing to not use or disclose confidential information). (ECF No. 31-2, PageID.947.) By downloading and using Plaintiff's trade secret information, Defendant Graham likely breached this duty. Thus, a substantial likelihood exists that Defendants acquired Plaintiff's trade secret information through "improper means." Mich. Comp. Laws § 445.1902(a), (b).

### B.  Irreparable Injury

Without an injunction stopping Defendants from soliciting Plaintiff's clients and employees, Plaintiff argues it will lose competitiveness and goodwill. (ECF No. 18, PageID.513-14.) The court agrees. Plaintiff has presented substantial evidence that Defendants have established a functional competing business, finalizing form

presentation and permit acquisition even as this case progresses. (ECF Nos. 31-9, 31-9, 31-11, 31-12, 31-13, 31-15, 31-17, 31-27, PageID.1123; ECF No. 31-28, PageID.1142, 1148.) They clearly intend to solicit Plaintiff's employees and clients. Plaintiff has shown that Defendant Graham has solicited at least one of Plaintiff's employees several times. (ECF No. 31-28, PageID.1142, 1148.) If this continues and Defendants were permitted to initiate a fully operational business, Plaintiff could lose standing in the private security services market; Plaintiff's brand name and reputation could suffer. "The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007) (quoting *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992)).

In addition, as discussed above, Plaintiff has shown that Defendants intend to engage in unfair competition by breaching a non-compete agreement and by utilizing Plaintiff's trade secret information. "[T]he loss of fair competition," including "from the breach of a non-competition covenant[,] is likely to irreparably harm an employer." *Id.* (quoting *Basicomputer Corp.*, 973 F.2d at 512).

### C. Substantial Harm to Others

The issuance of an injunction barring Defendants from competing with Plaintiff will not "cause substantial harm to others." *Liberty Coins, LLC*, 748 F.3d at 689-90. Consumers in the private security market undoubtably benefit from increased competition, but no evidence was presented that Defendants have yet acquired clients or that potential customers will be left without any access to security services if an injunction is issued. *See S. Glazer's Distrib. Of Ohio v. Great Lakes Brewing Co.*, 860

F.3d 844, 854 (6th Cir. 2017) (holding there was no substantial harm to others when potential consumers could "continue to receive [the relevant] products").

Any harm to Defendants, including loss of business opportunities, is heavily outweighed by the harm to Plaintiff from unfair competition. Furthermore, Defendant Graham signed a non-compete agreement and could have reasonably foreseen the issuance of an injunction. *See United States v. Edward Rose & Sons*, 384 F.3d 258, 264 (6th Cir. 2004) (no substantial harm where the enjoined party "knew of the risk [of an injunction] . . . when it undertook the enjoined activity"). Indeed, Plaintiff presented evidence that a consulting attorney warned all three Defendants in June 2020 that Defendant Graham's non-compete was a "red flag." (ECF No. 31-28, PageID.1144-45.)

### D.  Public Interest

Public interest favors an injunction. *Liberty Coins, LLC*, 748 F.3d at 689-90. "[T]he enforcement of voluntarily assumed contract obligations" is a strong public interest, as is the need to prevent unfair competition. *Certified Restoration Dry Cleaning Network*, 511 F.3d at 550. Those interests outweigh any possible countervailing public interest that could be served by allowing Defendants to compete in the private security industry. Defendant Graham voluntarily entered a non-compete agreement, weakening any legitimate public interest in encouraging new market entrants.

### E.  Weighing the Factors

The court must weigh the four factors "against each other." *Overstreet*, 305 F.3d at 573. Plaintiff has a substantial likelihood of succeeding on the merits, and irreparable injury will likely result absent an injunction. *Liberty Coins, LLC*, 748 F.3d at 689-90. An injunction will not inflict substantial harm on others, and the public interest will be served

in upholding Defendant Graham's non-compete agreement and barring Defendants from misappropriating trade secrets. *Id.* All four factors weigh in favor of an injunction, and Plaintiff's motion will be granted.

### F.  Discovery Schedule

Defendants moved to dismiss the complaint in lieu of filing an answer. (ECF No. 13.) On October 30, 2020, the court granted the motion in part and denied it in part. (ECF No. 21.) Defendants filed an answer on November 11, 2020, (ECF No. 26), but the parties have not yet initiated discovery.

The court will direct the parties to develop a joint proposed scheduling order with discovery deadlines. Plaintiff will be directed to lodge the proposed order with chambers within two weeks of this order.

### III. CONCLUSION

IT IS ORDERED that Plaintiff's Motion for Preliminary Injunction (ECF Nos. 18, 2) is GRANTED.

IT IS FURTHER ORDERED that Defendants are ENJOINED from: 1) soliciting and contacting any of Plaintiff's current or prospective customers, or customers with whom Plaintiff did business during the thirty-six (36) month period immediately prior to the date of entry of this order; and 2) soliciting and/or contacting any of Plaintiff's employees. These restrictions shall remain in place until July 2, 2022, or upon further order of the court, whichever is earlier.

IT IS FURTHER ORDERED that Defendants cease retention, use, or disclosure of Plaintiff's confidential, proprietary, and trade secret information.

IT IS FURTHER ORDERED that, by **January 15, 2021**, Defendants: 1) return Plaintiff's confidential, proprietary and trade secret information; 2) preserve and produce all electronic devices used to view or retain Plaintiff's confidential, proprietary, and trade secret information for forensic analysis and remediation; 3) provide a verified written inventory of the information taken from Plaintiff.

Finally, IT IS ORDERED that the parties are DIRECTED to confer and develop a proposed scheduling order with discovery deadlines. Plaintiff is DIRECTED to to email the court's case manager, at Lisa_Wagner@mied.uscourts.gov, copying opposing counsel, a joint proposed scheduling order by **January 12, 2021**.

s/Robert H. Cleland      /<br>
ROBERT H. CLELAND<br>
UNITED STATES DISTRICT JUDGE

Dated: December 29, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, December 29, 2020, by electronic and/or ordinary mail.

s/Lisa Wagner      /<br>
Case Manager and Deputy Clerk<br>
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\20-11785.PRUDENTIALDEFENSESOLUTIONS.MotionforPreliminaryInjunction.RMK.RHC.2.docx