**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

PRUDENTIAL DEFENSE SOLUTIONS, INC.,

    Plaintiff,

v.                                                  Case No. 20-11785

JAKE W. GRAHAM, MARK SHEAHAN,
and ROBERT CHARNOT

    Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND**
**DENYING IN PART MOTION TO QUASH**

Plaintiff Prudential Defense Solutions, Inc., brings this action asserting claims under the Michigan Uniform Trade Secrets Act ("MUTSA"), Mich. Comp. Laws § 445.1904, the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b)(1), and for state law claims of breach of contract, breach of fiduciary duty, and civil conspiracy. (ECF No. 15, PageID.247-60.) Plaintiff alleges that, as its vice president, Defendant Jake W. Graham signed an agreement not to compete with Plaintiff, but thereafter established a competing private security company with Defendants Mark Sheahan and Robert Charnot, two nonemployees. Plaintiff also alleges that Defendants misappropriated Plaintiff's proprietary information to use in their competing business.

Plaintiff subpoenaed John Krupa, an attorney representing Defendants. The subpoena seeks documents and communications between Krupa and Defendants or entities controlled by Defendants (Great Lakes Security, Inc., and Great Lakes Doorman Services). Krupa has moved to quash the subpoena, arguing the information sought in

the subpoena is privileged. (ECF No. 24.) The matter has been fully briefed. (ECF Nos. 27, 28.) The court has reviewed the record and does not find a hearing to be necessary. E.D. Mich. LR 7.1(f)(2). For the reasons provided below, the motion will be granted in part and denied in part.

## I. BACKGROUND

Krupa asserts he is an attorney for all three Defendants. (ECF No. 24, PageID.739; ECF No. 28, PageID.909-10.) On August 6, 2020, Defendant Graham emailed Defendants Sheahan and Charnot to discuss business opportunities. (ECF No. 24-1, PageID.745.) Plaintiff alleges that this proposed business venture would compete against Plaintiff as a private security services provider in the Chicago area.[1] (*Id.*) Defendant Graham identified three potential "new clients" for Defendants to solicit. (*Id.*) The three potential clients were listed by name and addresses. (*Id.*) Defendant Graham wrote that the potential clients had given him "verbal commitments" earlier in the year, and that "[he] spoke with John Krupa" and "[Krupa] says go get them." (*Id.*) The email added that "[n]o contracts exist so Krupa say it's all good news." (*Id.*) To conclude the email, Defendant Graham described the profit margins Defendants could make, proposed labor costs, and the strengths of the relationships Defendant Graham had with the potential clients. (*Id.*)

On October 5, 2020, Defendants produced the August 6 email to Plaintiff in response to discovery requests. (ECF No. 27-2.) On October 21, 2020, Plaintiff issued a subpoena to Krupa. The subpoena included four requests:

---

[1] Plaintiff also alleges that Defendants' competition was in breach of a non-compete agreement and that Defendants misappropriated trade secrets, among other claims. (ECF No. 15, PageID.247-60.)

>1. Copies of engagement agreements between John A. Krupa and/or his law firm and Great Lakes Security, Inc., Great Lakes Doorman Services, Jake Graham, Mark Sheahan, and/or Robert Charnot.
>
>2. All communications and documents exchanged between John A. Krupa and/or his law firm and Great Lakes Security, Inc., Great Lakes Doorman Services, Jake Graham, Mark Sheahan, and/or Robert Charnot.
>
>3. All documents regarding or relating to Great Lakes Security, Inc., Great Lakes Doorman Services, Jake Graham, Mark Sheahan, Robert Charnot, [Plaintiff's owners], Prudential Defense Solutions, Inc. ("PDS"), and/or [Plaintiff's predecessor corporation], including without limitation, any communications or documents concerning any actions taken or contemplated as competitive or potentially competitive to PDS.
>
>4. All documents or communications related to the topics and substance of the [August 6] email.

(ECF No. 24-1, PageID.743.) Krupa filed the motion to quash on November 9, 2020. (ECF No. 24.)

## II.  STANDARD

Plaintiff asserts in its complaint that the court has federal question jurisdiction. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 376 (2012) (quoting 28 U.S.C. § 1331) ("Congress granted federal courts . . . original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). (ECF No. 15, PageID.226.) "Questions of privilege are to be determined by federal common law in federal question cases." *Reed v. Baxter*, 134 F.3d 351, 355 (6th Cir. 1998) (citing Fed. R. Evid. 501).

Plaintiff brings four state claims under the court's supplemental jurisdiction. (ECF No. 15, PageID.226.) The court has supplemental jurisdiction over "'other [state] claims' in the same case or controversy as a claim within the district court['s] original jurisdiction." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting

3

28 U.S.C. § 1367(a)). Federal Rule of Evidence 501 states that, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." While this language may appear to require that Plaintiff's state claims be governed by state law of privilege, committee notes of the Federal Rules of Evidence explain that "Federal law of privileges should be applied with respect to pendent State law claims when they arise in a Federal question case." Fed. R. Evid. 501 advisory committee's note to 1974 amendment. In cases presenting a federal question, "federal privilege law applies to all claims," including claims brought under the court's supplemental jurisdiction, "in order to avoid conflicting application in the same case." *UAW v. Honeywell Int'l, Inc.*, 300 F.R.D. 323, 327 (E.D. Mich. 2014) (Grand, M.J.); *see also Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992) ("[I]n federal question cases where pendent state claims are raised the federal common law of privileges should govern all claims of privilege raised in the litigation.").

The attorney-client privilege bars compelled disclosure of "confidential communications between a lawyer and his client in matters that relate to the legal interests of society and the client." *In re Grand Jury Subpoena*, 886 F.2d 135, 137 (6th Cir. 1989) (quotations removed). "The privilege's primary purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Ross v. City of Memphis*, 423 F.3d 596, 600 (6th Cir. 2005). The attorney-client privilege has eight elements:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance

4

> permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

*Reed*, 134 F.3d at 355-56.

"The burden of establishing the existence of the privilege rests with the person asserting it." *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999). The privilege is "narrowly construed because it reduces the amount of information discoverable during the course of a lawsuit." *Ross*, 423 F.3d at 600 (quoting *United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997)).

On motion, the court must quash a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii).

### III. DISCUSSION

Krupa argues that Plaintiff's subpoena must be quashed because it seeks discovery of privileged information. The court will discuss whether a privilege applies, whether any privilege that existed has been waived, and the scope of any waiver. Although the court finds the attorney-client privilege has been waived, Plaintiff's subpoena is overbroad and must be limited to the subject matter of the waiver.[2]

---

[2] Krupa also argues that the subpoena should be quashed because Plaintiff can obtain the information from Defendants. (ECF No. 24, PageID.738.) Krupa cites no Federal Rule of Civil Procedure nor any binding precedent that a subpoena of relevant information to a third party must be quashed if the information sought *could* be obtained from a named party. "Merely because [Plaintiff] may be able to obtain certain information from other sources does not render [a] subpoena unnecessary." *Ellora's Cave Pub., Inc. v. Dear Author Media Net., LLC*, 308 F.R.D. 160, 162 (N.D. Ohio 2015). Plaintiff argues that obtaining relevant information from third parties better ensures the discovery is full and complete. (ECF No. 27, PageID.830-31.) The court finds this a reasonable justification for the subpoena, and the subpoena will not be quashed on the ground that information can be obtained from a different source.

### A. Whether a Privilege Applies

Krupa argues that the email is protected by a common-interest privilege. That privilege applies where "two or more clients with a common interest in a matter are represented by separate lawyers and agree to exchange information concerning the matter." *Reed*, 134 F.3d at 358; *see also Iafrate v. Warner Norcross & Judd, LLP*, 335 F.R.D. 378, 381 (E.D. Mich. 2020) (Whalen, M.J.) (quoting *Ford Motor Co. v. Mich. Consol. Gas Co.*, Case No. 08-13503, 2013 WL 5435184, at *5 (E.D. Mich. Sep. 27, 2013) (Majzoub, M.J.)) ("[The common-interest doctrine] applies where the parties are represented by separate attorneys but share a common legal interest."). However, Krupa states he "represents each of the Defendants in this case"; thus, the common-interest doctrine is not applicable. (ECF No. 24, PageID.739.)

Krupa asserts in his reply that the "communications [are] better described as . . . 'co-client privilege' rather than a 'common interest privilege.'" (ECF No. 28, PageID.910.) That doctrine is not well defined. "Federal courts continue to confuse the allied lawyer [or common-interest] doctrine, which applies when parties with separate lawyers consult together, and the joint client doctrine, which applies when two clients share the same lawyer." 24 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 5493 (1st ed. 2020). However, the joint-client privilege applies only where "two persons employ a lawyer as their common agent" and "the communications [are] to [the attorney]." *Grand Trunk W. R.R. Co. v. H.W. Nelson Co.*, 116 F.2d 823, 835 (6th Cir. 1941); *accord Iafrate*, 335 F.R.D. at 381-82. "The doctrine is limited strictly to those communications made to further an ongoing enterprise." 81 Am. Jur. 2d *Witnesses* § 352 (2020).

6

Defendants, represented by the same counsel, disclosed the communications to Plaintiff as part of discovery. (ECF No. 27-2.) "[T]he attorney-client privilege is waived by voluntary disclosure of private communications by an individual . . . to third parties." *In re Lott*, 424 F.3d 446, 452 (6th Cir. 2005); *see also United States v. Collis*, 128 F.3d 313, 320-21 (6th Cir. 1997) (finding the attorney-client privilege was waived when the client informed government agents that the client had exchanged drafts of a letter with his attorney); *Maday v. Public Libraries of Saginaw*, 480 F.3d 815, 820-21 (6th Cir. 2007) (holding the attorney-client privilege was waived when the client disclosed to a social worker that the attorney advised the client to settle a lawsuit).

The August 6 email identified Krupa by name and described the advice he gave to Defendants with respect to three specific clients Defendants could obtain business from. (ECF No. 24-1, PageID.745.) The disclosed communication stated that "[Defendant Graham] spoke with John Krupa" and "[Krupa] says go get [the three potential clients]." (*Id.*) Further, the email detailed that Krupa came to this conclusion because "[n]o contracts exist," likely referring to Plaintiff and its business relationships. (*Id.*) Consequently, the joint-client doctrine does not apply in this case, and the email communication is not protected by the attorney-client privilege. *See Grand Trunk W. R.R. Co.*, 116 F.2d at 835; *In re Lott*, 424 F.3d at 452.

### B. Scope of the Waiver

Having determined that Defendants waived the attorney-client privilege, the next question is how broad the scope of that waiver is. Once the privilege is waived, waiver extends to all information "that clearly pertain[s] to the subject matter of the specific points on which [the] waiver . . . occur[ed]." *In re Grand Jury Proceedings Oct. 12, 1995*,

7

78 F.3d 251, 256 (6th Cir. 1996); *accord United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997) (quotations removed) ("[T]he inquiry is whether the client's disclosure involves the same subject matter as the desired [information]."). In determining the scope of a waiver, the court "must be guided by fairness concerns." *In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d at 256. "[R]ealizing that fairness is at the heart of the waiver issue, courts have generally held that the 'same subject matter' is to be viewed narrowly." *Dougherty v. Esperion Therapeutics, Inc.*, Case No. 16-10089, 2020 WL 7021688, at *4 (E.D. Mich. Nov. 30, 2020) (Whalen, M.J.) (quoting *United States v. Skeddle*, 989 F.Supp. 905, 908-09 (N.D. Ohio 1997)); *see also In re Lott*, 424 F.3d at 453 (quotations removed) ("Implied waivers are consistently construed narrowly.").

The Federal Rules of Evidence standardize the waiver doctrine for "disclosure[s] . . . made in a federal proceeding." Fed. R. Evid. 502(a). "Rule 502 applies in federal civil, criminal, admiralty, and bankruptcy cases at all stages of the proceedings before judges," and would apply in this case where Defendants disclosed the communication in discovery. 23A Wright & Miller, *supra*, § 5443. The scope of a waiver "extends to . . . undisclosed communication or information" if: 1) "the waiver is intentional"; 2) "the disclosed and undisclosed communications or information concern the same subject matter"; and 3) "they ought in fairness to be considered together." Fed. R. Evid. 502(a).

Defendants provided Plaintiff the August 6 email in a discovery disclosure; no conditions or qualifications were mentioned at the time the communication was handed over. (ECF No. 27-2.) Krupa does not argue that disclosure was inadvertent or unknowing, and Defendants themselves provide no indication that the disclosure was a mistake. In fact, Defendants did not provide any response to the instant motion.

8

Therefore, the court finds the waiver of attorney-client privilege intentional. Fed. R. Evid. 502(a).

For the first request of Plaintiff's subpoena, it seeks production of any engagement agreements between Krupa and Defendants or their companies. (ECF No. 24-1, PageID.743.) Neither Krupa nor Defendants claim this information is covered by the attorney-client privilege, and Krupa does not argue that this portion of the subpoena should be quashed. "In general, the fact of legal consultation or employment, clients' identities, attorney's fees, and the scope and nature of employment are not deemed privileged." *Humphreys, Hutcheson and Moseley v. Donovan*, 755 F.2d 1221, 1219 (6th Cir. 1985). An engagement agreement does not include "communications" made for the purposes of obtaining "legal advice." *Reed*, 134 F.3d at 355-56. The court finds Plaintiff's first subpoena request permissible.

However, keeping in mind the guiding doctrine of fairness, not all requests in the subpoena covers the "same subject matter" as the initial disclosure. Fed. R. Evid. 502(a); *In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d at 256. In the second request of the subpoena, Plaintiff asks that Krupa produce "[a]ll communications and documents exchanged between [him] and/or his law firm and [Defendants and Defendants' companies]." (ECF No. 24-1, PageID.743.) In Plaintiff's third request, it seeks "[a]ll documents regarding or relating to [Defendants and Defendants' companies], [Plaintiff's owners], [Plaintiff], and [Plaintiff's predecessor company]." (*Id.*) These requests are exceptionally broad. "All communications and documents" between Krupa and his clients and "[a]ll documents . . . relating to" Defendants and Plaintiff would encompass every document and communication Krupa possesses touching on

9

this litigation, no matter how distant the topic is from the August 6 email. The court has difficulty imagining what undisclosed, yet privileged, documents mentioning this case or its facts would *not* be covered by Plaintiff's second and third requests.

The requests are not adequately related to the "subject matter" of the August 6 email. Fed. R. Evid. 502(a); *In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d at 256. The content of that email was narrow. It discussed Krupa's advice that Defendants could legally solicit three specific clients in the Chicago-area. The reference to Krupa was in total three sentences long and did not reference, mention, or relate to any other topic of advice or communication. The court agrees with Krupa that Plaintiff's requests "go far beyond" the August 6 email, and enforcement of the second and third requests would not fairly apply Defendants' limited waiver of attorney-client privilege. *See In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d at 256; *Dougherty*, 2020 WL 7021688, at *4. (ECF No. 24, PageID.740.) The court will quash Plaintiff's second and third requests. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii).

Plaintiff's fourth request seeks "[a]ll documents or communications related to the topics and substance of the [August 6] email." (ECF No. 24, PageID.740.) This request is more appropriately tailored and tracks closely to the "subject matter" of the August 6 email. Fed. R. Evid. 502(a); *In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d at 256. Krupa agrees that, if the attorney-client privileged is waived, Plaintiff could discover information "regarding advice on whether . . . Defendants could pursue business from the companies listed in the [August 6] email." (ECF No. 24, PageID.740.)

Plaintiff asserts in its response that the waiver should extend to "all communications in which Krupa provided legal advice to [Defendant] Graham regarding

10

actions [Defendant] Graham or [Defendants' company] have taken or may take related to any solicitation or potential solicitation of Plaintiff's clients, or regarding actions that are competitive or potentially competitive to Plaintiff." (ECF No. 27, PageID.830.) Like Plaintiff's second and third requests, this extends the scope of the August 6 email waiver beyond its reasonable limits. The disclosed email identified three specific commercial entities, and Defendant Graham asserted that Krupa believed Defendants could legally solicit those entities. (ECF No. 24, PageID.740.) Plaintiff now seeks to extend that waiver to advice to all competitive actions on the part of Defendants taken against any client or potential client of Plaintiff at any point in time, even after the August 6 communication was made. Yet Defendants chose to disclose only the advice about the three potential clients in the August 6 email and nothing more. Waivers are "to be viewed narrowly." *Dougherty*, 2020 WL 7021688, at *4; *see also In re Lott*, 424 F.3d at 453. Considering the need for fairness to Defendants and Krupa, Plaintiff's request is overbroad and seeks information covered by the attorney-client privilege. Fed. R. Evid. 502(a); *In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d at 256.

The legal advice Defendants disclosed stated Defendants could solicit the three potential clients because "[n]o contracts exist," likely referring to Plaintiff. (ECF No. 24, PageID.740.) Plaintiff implies in its briefing that it can discover any other advice Krupa gave to Defendants regarding business solicitation using similar legal reasoning. (*See* ECF No. 27, PageID.829-30.) Yet the scope of a waiver extends to the "same subject matter" of the initial disclosure. Fed. R. Evid. 502(a). It does not extend to all factual scenarios where Krupa may think similar legal advice is applicable. Legal principles and ideas may apply in many different times, places, and circumstances. If Plaintiff's

11

reasoning were to hold, a relatively narrow waiver could open the door to privileged information in diverse and unique factual situations, no matter how distinct in substance the information is from topics discussed in an initial disclosure. The court will not extend the waiver doctrine that far.

Cases in the Sixth Circuit support the court's findings. In the case *In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d at 253, government investigators interviewed a medical laboratory's owner and president. The businesspeople told the investigators that their company had a twenty-four-part marketing plan that they used to obtain nursing homes as clients. *Id.* The owner and president specified to investigators that their attorney had advised them that marketing to nursing homes through the provision of free glucose testing equipment, as well as the billing of Medicare for tests, was legally compliant; those marketing strategies were part of the business's twenty-four-part marketing plan. *Id.* The government sought disclosure of all privileged information relating to the laboratory's entire marketing plan. *Id.* The Sixth Circuit found that the attorney-client privilege was waived as to the provision of free testing and billing of Medicare. *Id.* at 254-55. However, the court found that the waiver did not extend to portions of the marketing plan that were not "inexorably linked" to the advice specifically mentioned by the owner and president. *Id.* at 255. Despite the businesspeople disclosing privileged information for one part of the same marketing plan, which was used in targeting the same clients, the Sixth Circuit urged that the district court use restraint in requiring disclosure of the entire plan. *Id.* 255-56 ("[The] waiver of the privilege by divulging the attorney's advice on several specific items of the marketing plan [does not] necessarily constitutes waiver as to the attorney's advice on the entire

plan."). Here, Defendants disclosed advice for a marketing strategy for three specific clients whom Defendants planned to solicit in August 2020. Plaintiff seeks information for actual and potential marketing to any other clients at any other point in time. That request is overbroad and must be quashed. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii).

Similarly, in *In re OM Securities Litigation*, 226 F.R.D. 579, 590- 94 (N.D. Ohio 2005), an audit committee of a business disclosed a PowerPoint presentation made as part of an investigation into the business's logistical problems; the investigation was in its beginning stages. The business issued a public announcement after the presentation that its prior earnings statement would likely be readjusted. *Id.* The presentation described in detail interviews, business and financial data, and investigative findings. *Id.* at 591-92. The court found that any attorney-client privilege was waived as to documents and communications used to formulate the PowerPoint presentation. *Id.* at 593-94. However, the court rejected arguments that the waiver extended to the entire investigation of logistical issues, even though the PowerPoint presentation reported integral findings of the investigation and substantial amounts of information used to come to those findings. *Id.* at 594. Specifically, the court stated that the privilege waiver did not extend "to information that was not even in existence at the time of disclosure." *Id.* Here, even if Krupa gave advice to Defendants as part of a larger strategy to solicit other potential clients, the August 6 email disclosed information only as to Defendants' solicitation of three companies in the summer of 2020. Like the presentation in *In re OM Securities Litigation*, the waiver extends only to that content, not to other, potentially similar, information. Notably, Plaintiff also seeks privileged information not even in

existence at the time of the email, a scope that the *In re OM Securities Litigation* court explicitly rejected*. Id.*

Plaintiff cites the decision in *Iafrate*, 335 F.R.D. at 385-87, to support its argument. *Iafrante* involved issuance of stock warrants for a closely held corporation. The plaintiffs, holders of the warrants, alleged they were intentionally misinformed as to when the warrants expired. *Id.* at 380. The court's decision focused on the plaintiff's arguments that they were entitled to confidential communications under the joint-client doctrine and as members of the corporation's board of directors. *Id.* at 381-85. However, the court also analyzed the attorney-client privilege and found that no waiver had occurred. *Id.* at 386-87. To the extent a waiver had occurred, the court held that the material "would be irrelevant to the issues of the case." *Id.* Plaintiff points to a portion of the decision where the court noted that the defendant in the case disclosed legal advice on the appraisal of the stock warrants. *Id.* at 386-87. The court stated generally, without detail and description, that a waiver, if it occurred, would cover topics regarding "the appraised value of the warrants." *Id.* The court nonetheless concluded that the information was not relevant and thus not discoverable. *Id. Iafrate*'s limited discussion of the scope of a *potential* waiver, made while finding that a waiver did not exist or apply, does not support Plaintiff's position.

Thus, Plaintiff can subpoena information touching on the subject matter of the August 6 email. This includes material sought in Plaintiff's fourth request: "[a]ll documents or communications related to the topics and substance of the [August 6] email." (ECF No. 24, PageID.740.) More precisely, as Krupa agrees, Plaintiff can obtain any information, documents, or communications "regarding advice on whether . . .

14

Defendants could pursue business from the companies listed in the [August 6] email." (ECF No. 24, PageID.740.)

### IV. CONCLUSION

Defendants waived the attorney-client privilege when they disclosed the August 6 email to Plaintiff in discovery. Plaintiff may obtain from Krupa "[a]ll documents or communications related to the topics and substance of the [August 6] email." (ECF No. 24-1, PageID.743.) Plaintiff may also obtain attorney engagement agreements between Krupa and Defendants or their entities. The remainder of Plaintiff's subpoena will be quashed as overbroad. Accordingly,

IT IS ORDERED that Krupa's "Motion to Quash" (ECF No. 24) is GRANTED IN PART and DENIED IN PART. It is GRANTED as to the second and third request of Plaintiff's subpoena. It is DENIED as to the first and fourth request of Plaintiff's subpoena.

                                                             s/Robert H. Cleland                /
                                                             ROBERT H. CLELAND
                                                             UNITED STATES DISTRICT JUDGE

Dated:  February 5, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 5, 2021, by electronic and/or ordinary mail.

                                                             s/Lisa Wagner                     /
                                                             Case Manager and Deputy Clerk
                                                             (810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\20-11785.PRUDENTIALDEFENSESOLUTIONS.MotiontoQuash.RMK.2.docx